**WO**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　BL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Lowell McElyea,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>　　　　Defendants. | No. CV 04-1102-PHX-SMM (HCE)<br><br>**ORDER** |

Plaintiff Joseph Lowell McElyea has filed a Fourth "Motion for Temporary Restraining Order/Preliminary Injunction/Expedited Hearing Request." (Doc. #117). Plaintiff's motion for a restraining order and a preliminary injunction will be denied and his request for an expedited hearing will be denied as moot. Because the Court finds Plaintiff's multiple frivolous motions and filings are malicious and vexatious and based on complaints which are designed to harass and antagonize the Defendants, his action will be dismissed without prejudice.

**A.　Procedural History**

On May 26, 2004, Plaintiff filed a civil rights action naming as Defendants, *inter alia*, (1) Dora Schriro, (2) Bennie Rollins, (3) Mike Linderman, (4) D. Cuff, (5) Alwin Becker, (6) Kardyn McConnell, (7) Wayne Mason, (8) T. Weisinger, (9) Jennifer Bantlin, (10) Barbara Wilbur, (11) Lupita Coy, (12) Francisco Ayala, and (13) Daniel Ideus.[1]

---

[1] The Canteen Corporation, Barry Keith, and John and Jane Does were *sua sponte* dismissed without prejudice on June 8, 2004. (Doc. #4).

Plaintiff alleged that the Defendants violated his constitutional right to free exercise of his religion. (Docs. ## 1 & 137). In particular, (1) in 2004, the Defendants removed Plaintiff from a list of inmates who had permission to receive a Kosher diet, in retaliation for Plaintiff's prior complaints about his right to the free exercise of his religion, (2) the Defendants denied him the ability to properly observe Passover in 2004 by denying him a Kosher diet, (3) Plaintiff was unable to properly observe Shabbat because the Defendants required him to engage in writing, (4) Plaintiff was deprived of the right to possess religious garments, and (5) Plaintiff was forced to shave his beard with a razor and prevented from growing side locks.[2] (Id.).

On three prior occasions, Plaintiff sought an emergency temporary restraining order and a preliminary injunction, which this Court has denied without a hearing. (Docs. ## 1, 3, 10, 40, 56 & 78). Defendants Wilbur, Coy, Ayala, and Ideus (the "Canteen Defendants") filed a motion for summary judgment. (Doc. # 102). On September 13, 2005, the Court granted the motion, thereby dismissing Defendants Wilbur, Coy, Ayala, and Ideus from the action. (Doc. # 137). Thus, only Defendants (1) Dora Schriro, (2) Bennie Rollins, (3) Mike Linderman, (4) D. Cuff, (5) Alwin Becker, (6) Kardyn McConnell, (7) Wayne Mason, (8) T. Weisinger, and (9) Jennifer Bantlin are a party to this motion.

In response to Plaintiff's current motion for preliminary injunction, on July 20, 2005, the Canteen Defendants filed a response attaching the affidavits of Marvel L. Morrison and Gregory D. Cote, (Doc. # 123, Exhs. 1 and 2), and on August 25, 2005 the remaining Defendants filed a response attaching Michael Linderman's declaration. (Doc. # 135, Exh. A). On September 11, 2005,[3] Plaintiff filed his declaration in response to Linderman's declaration. (Doc. # 142). The Defendants filed a "Notice of Acknowledgment," arguing

---

[2] Plaintiff also alleged that the prison was "showing favoritism to Christian based religion by having a television channel exclusively showing Christian religious programs." (Doc. #1). This count was dismissed without prejudice for failure to state a claim. (Doc. # 4).

[3] Under the "prison mailbox rule," a filing is deemed "filed" when handed by the prisoner to a prison official for mailing. See Houston v. Lack, 487 U.S. 266, 270-71 (1988).

1  (1) that if Plaintiff's declaration was to be construed as a reply to the Defendants' response
2  to his motion for injunctive relief, it should be stricken as untimely filed, and (2) requesting
3  that, if this Court deems the declaration to be a filing requiring a response, the Defendants
4  be advised accordingly. (Doc. # 143).

5  First, because Plaintiff appears to be attempting to file a reply to the Defendants'
6  response to his motion for injunctive relief, as noted by the Defendants, Doc. # 142 will be
7  construed as a reply but the Defendants are not required to file a response.

8  Second, pursuant to Local Rules, a moving party has five days after the nonmoving
9  party serves its response to a motion to file a reply memorandum. L.R.Civ. 7.2(d). On
10 August 25, 2005, the Defendants sent a copy of their response by mail to Plaintiff at the
11 ASPC-Eyman, Meadows Unit. (Doc. # 135 at 8). Eleven calendar days later, on September
12 11, 2005, Plaintiff filed his declaration. (Doc. # 142). However, during that time Plaintiff
13 was transferred to a facility in Tucson. (Doc. # 136; Plaintiff's address change was effective
14 on September 1, 2005). Thus, in order to give Plaintiff the benefit of the doubt, the Court
15 will assume that he could not receive mail and draft a response as effectively during the time
16 he was being transferred. Accordingly, his reply will be considered and the Defendants'
17 request to strike the filing will be denied.

18 **B.  Legal Standard for Preliminary Injunctive Relief**

19 A request for injunctive relief requires that Plaintiff make a showing of "real or
20 immediate threat" of injury. Hodgers-Durgin v. De La Vina 199 F.3d 1037, 1042 (9th Cir.
21 1999) (quoting City of Los Angeles v. Lyon, 461 U.S. 95, 111 (1983)). Plaintiff is entitled
22 to preliminary injunctive relief only if he shows either: "'(1) a likelihood of success on the
23 merits and the possibility of irreparable injury, or (2) the existence of serious questions going
24 to the merits and the balance of hardships tipping in [the movant's] favor. These two
25 formulations represent two points on a sliding scale in which the required degree of
26 irreparable harm increases as the probability of success decreases.'" MAI Sys. Corp. v. Peak
27 Computer, Inc., 991 F.2d 511, 516-517 (9th Cir. 1993). Under either formulation of the test,
28

1  the movant must demonstrate a significant threat of irreparable injury.  AGCC v. Coalition
2  for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991).

3  **C.     Motion for Preliminary Injunction**

4  Plaintiff is seeking an order requiring the Defendants to (1) cease engaging in
5  retaliatory actions, namely the searches of his person and assigned living area, (2) cease
6  serving food which is not certified as Kosher, (3) cease engaging in retaliatory disciplinary
7  actions, (4) allow him to properly observe Shabbat by not forcing him to leave his living area
8  to eat, (5) allow him to properly observe Shabbat by not forcing him to sign for the two
9  meals, and (6) provide him with donated supplies for Shabbat services.  In his reply, Plaintiff
10 also (1) seeks to have separate services from individuals he considers not to be Jews,
11 (2) seeks to have his medical shaving waiver enforced, (3) seeks to have the prison abide by
12 the dietary Kosher requirements, and (4) complains about the fact that Rabbi Shemtov has
13 not responded to his requests to visit him regarding the "religious denials" by the Defendants.
14 (Doc. # 142).  Plaintiff is requesting an expedited telephonic hearing.

15 "Section 3 of RLUIPA provides, in relevant part, that '[n]o government shall impose
16 a substantial burden on the religious exercise of a person residing in or confined to an
17 institution . . . even if the burden results from a rule of general application,' *unless* the
18 government established that the burden furthers 'a compelling governmental interest,' *and*
19 does so by 'the least restrictive means.'"  Warsoldier v. Woodford, 418 F.3d 989, 994 (9 Cir.
20 2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).  "RLUIPA defines 'religious exercise' to
21 include 'any exercise of religion, whether or not compelled by, or central to, a system of
22 religious belief.'"  Id. (quoting § 2000cc-5(7)(A)).

23 "[A] 'substantial burden' on 'religious exercise' must impose a significantly great
24 restriction or onus upon such exercise."  Warsoldier, 418 F.3d at 995 (quotations omitted).
25 Further, a substantial burden includes situations "'where the state . . . denies [an important
26 benefit] because of conduct mandated by religious belief, thereby putting substantial pressure
27 on an adherent to modify his behavior and to violate his belief.'"  Id.  Even if the compulsion
28 is indirect, the infringement is substantial.  Id.

- 4 -

### 1. **Retaliatory Actions**

Plaintiff seeks to have this Court order the Defendants to cease engaging in retaliatory actions. (Doc. # 117 at 11-12). In particular, Plaintiff alleges that "he has been singled out and targeted for retaliation and harassment based on his continual complaints concerning what he is receiving on the Kosher diet that is not certified as Kosher and for not being complacent in the treatment he has been submitted to as an (sic) observant Orthodox Jew." (Id. at 7). Plaintiff asserts that his living area has been "shaken down" three times in one month, his personal property was seized, and his prayer shawl and Torah were handled in a disrespectful manner. (Id.).

"A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997). The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim on the merits. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). Thus, the party seeking preliminary injunctive relief "must necessarily establish a relationship between the injury claimed in the motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994). Plaintiff's claims of retaliatory discipline is unrelated to the merits of his action. See In re Lorillard Tobacco Company, 370 F.3d 982, 986-97 (9th Cir. 2004) (addressing whether an ex parte order to seize property was an injunction, providing that the injunctions "give or aid in giving some or all of the substantive relief sought by a complaint," but did not include "restraints or directions . . . concerning the conduct of the parties or their counsel, unrelated to the substantive issues of the action"). Plaintiff's claims of recent retaliatory shake downs and discipline are not related to his original action which concerns alleged religious violations occurring more than a year earlier. For this reason alone, this claim fails to warrant injunctive relief.

1   Moreover, the claim is too conclusory. "[A] chilling effect on a person's First
2   Amendment right . . . is sufficient to raise a retaliation claim." Bruce v. Ylst, 351 F.3d 1283,
3   1288 (9th Cir. 2003). However, a "retaliation claim must rest on proof" that the actions to
4   which Plaintiff complains were "in retaliation for [Plaintiff's] exercise of his constitutional
5   rights and that the retaliatory action advanced no legitimate penological interest." Hines v.
6   Gomez, 108 F.3d 265, 267 (9th Cir. 1997); see also Bruce, 351 F.3d at 1288. The Plaintiff
7   "bears the burden of pleading and proving the absence of legitimate correction goals for the
8   conduct of which he complains." Bruce 351 F.3d at 1289.

9   Plaintiff alleges that because he complained about not receiving a Kosher diet, his
10  living area has been "shaken down" three times in one month, his personal property was
11  seized, and his prayer shawl and Torah were handled in a disrespectful manner. However,
12  Plaintiff does not attempt to allege, much less demonstrate, that the prison officials lacked
13  a legitimate penological interest for their conduct. Further, Plaintiff's allegations that his
14  prayer shawl and Torah were handled in a disrespectful manner, without at least an
15  explanation of how the items were handled, are conclusory and cannot support injunctive
16  relief. See Somers v. Thurman, 109 F.3d 614, 622 n.5 (9th Cir. 1997) (providing that
17  conclusory allegations are insufficient to support the stripping of qualified immunity).

18  **2.    Non-certified Kosher food**

19  Plaintiff seeks to have this Court order the Defendants to stop serving food that is not
20  certified as Kosher. (Doc. # 117 at 11-12). Plaintiff asserts that the tea bags, salt, sugar,
21  pepper, and coffee are not certified as Kosher, and thus should not be included on the Kosher
22  menu. (Id. at 4, Exh. 1). Attached to the Defendants' response was a Declaration by
23  Linderman, Administrator of Pastoral Activities, in which he declared that Rabbi Yossie
24  Shemtov of Chabad of Tucson, Arizona, a member of the ADC Religious Advisory
25  Committee, informed him that "the pre-packaged condiments, such as salt, pepper, and sugar,
26  as well as instant coffee and tea bags, need not be certified as Kosher." (Doc. # 135, Exh.
27  A at ¶ 5). Morrison, a Licensed Dietician and Regional Dietician for Canteen, attested that
28

- 6 -

1  "items like tea, coffee, sugar, sugar substitute, salt, and pepper . . . were approved for service
2  by Rabbi Shemtov in pre-packaged packets without the Kosher symbol." (Id. at Exh. B ¶ 6).
3        Plaintiff alleges that he is improperly served food items such as tea bags, salt, sugar,
4  pepper, and coffee which are not certified as Kosher. However, according to Linderman and
5  Morrison, Rabbi Shemtov has approved the serving of these items as part of a Kosher diet.
6  See San Antonio Comm. Hosp. v. Southern California District Council of Carpenters, 125
7  F.3d 1230, 1238 (9th Cir. 1997) (providing that the hearsay evidence was properly admitted
8  because the opposing party did not make a timely objection to the evidence). Plaintiff asserts
9  that Rabbi Shamtov is not his Rabbi and "is paid by ADOC and represents their interest, not
10 mine." (Doc. # 142 at ¶ 4). However, Plaintiff does not dispute the assertion that the non-
11 certified items about which he complains are Kosher. Because the Defendants are in
12 conformity with the requirements of Plaintiff's religious diet, the serving of these non-
13 certified, yet Kosher items does not burden Plaintiff's exercise of his religion. See
14 Warsoldier, 418 F.3d at 994-94. Further, Plaintiff's complaints appear to be an attempt to
15 harass the Defendants.

16     **3.**     **Shabbat**

17     Plaintiff seeks to have this Court order the Defendants to allow him to properly
18 observe Shabbat by not forcing him to leave his living area to eat, and not forcing him to sign
19 for the two meals. (Doc. # 117 at 11-12).

20         **i.**     **Walking**

21     Plaintiff argues that he is forced to leave his living area and sign for three Shabbat
22 meals, and at times has been forced to wait an hour outside the kitchen. (Doc. # 117 at 5).
23 Linderman declared that "[f]or the purposes of Shabbat, the unit where [Plaintiff] is housed
24 is considered his living area. Therefore, going from his cell to the chow hall does not violate
25 Shabbat." (Doc. # 135, Exh. A at ¶ 13). Attached to the Declaration was an Inmate Letter
26 and Response, in which Plaintiff asserted that he could not walk more than 2000 cubits on
27 the Shabbat. (Id. at Exh. 1). The prison calculated the steps from the dorm to the kitchen and
28 back and determined that, based on the conclusion that a cubit was 25.25 inches, for three

1 meals during a Shabbat, Plaintiff walked approximately 3,339 feet, which was 952 feet less
2 than 2000 cubits. (Id.).

3 Plaintiff has failed to contradict the Defendants' evidence that Plaintiff may get his
4 meal tray during Shabbat without walking more than 2000 cubits. Thus, the Defendants'
5 refusal to deliver Plaintiff's meals to his cell is in conformity with Plaintiff's religious
6 requirements and does not burden Plaintiff's right to exercise his religion. See Warsoldier,
7 418 F.3d at 994-95. Moreover, Plaintiff asserted this restriction after several years of not
8 objecting to the "walking requirement," which further underscores its frivolity and
9 demonstrates an attempt to antagonize the Defendants.

### ii. Signing

11 Plaintiff alleges that he is singled out as he is the only Orthodox Jewish inmate and
12 the only individual required to sign an inventory sheet prior to receiving any meal. (Doc #
13 117 at 6). Plaintiff fears that he will be taken off a Kosher diet for non-compliance with the
14 requirement that he must sign for five Kosher meals in a seven day period. (Id. at 8).
15 Linderman declared that there were two meals served during Shabbat, dinner on Friday night
16 and brunch on Saturday. (Doc. # 135, Exh. A at ¶ 14). Moreover, "[i]nmates receiving a
17 religious diet are allowed to miss signing for five out of seven meals before their diet will be
18 revoked." (Id.). Therefore, if Plaintiff refused to sign for the two meals served during
19 Shabbat, he would still be in compliance with prison regulations and would not be removed
20 from a Kosher diet. (Id.). Morrison attested that in response to the high number of
21 complaints from Plaintiff relating to his diet, a special process was implemented to ensure
22 that his meals conformed to the Orthodox Kosher Diet and prepared and served in a manner
23 that maintains their Kosher status. (Id. at Exh. B ¶ 7). As part of that process, Plaintiff is
24 required "to sign a log confirming that his meal conforms to the requirements of the
25 Orthodox Kosher Diet after reviewing the contents of his meal tray." (Id. at ¶ 8). The
26 second part of the process, consistent with policies in effect prior to the Plaintiff's dispute,
27 "requires the prisoner plaintiff and a Canteen staff member to sign a log acknowledging that
28 the prisoner plaintiff received his meal." (Id.).

- 8 -

1    Attached to Plaintiff's reply was a letter from Acting Warden John W. Gay in
2 response to Plaintiff's concerns regarding his removal from a Kosher diet in 2004. (Doc.
3 # 142, Exh. 4). Gay noted that Plaintiff acknowledged in writing that if he missed five meals
4 in seven days, he would be removed from a Kosher diet. (Id.). Gay informed Plaintiff that
5 Plaintiff missed eight meals: three for refusing to sign on Sabbat; four because, according to
6 Plaintiff, "the security officer failed to awaken [him] when he announced breakfast turn out";
7 and one for an unknown reason. (Id.). Because Plaintiff was unable to justify why he missed
8 eight Kosher diet trays in seven days, he was removed from a Kosher diet. (Id.).

9    Plaintiff may remain on a Kosher diet even if he fails to sign for the Shabbat meals.
10 Moreover, based on the filings, Plaintiff was last removed from a Kosher diet because he
11 missed signing for eight meals, only three of which were Shabbat meals. (Id.). According
12 to the prison policy, not considering the three Shabbat meals, Plaintiff missed signing for five
13 meals, more than he is allowed to miss to remain on a Kosher diet. (Doc. # 135, Exh. A at
14 ¶ 14). Thus, the Defendants did not place a substantial burden on Plaintiff's religious
15 exercise because, although the prison requires him to sign for all Kosher meals, the prison
16 will not remove him from a Kosher diet for merely failing to sign for Shabbat meals. See
17 Warsoldier, 418 F.3d at 994-95. The Defendants' policy of excusing Plaintiff's failure to
18 sign for Shabbat meals is in conformity with Plaintiff's religious tenants and is thus not a
19 burden on his right to exercise his religion. Moreover, because Plaintiff can remain on a
20 Kosher diet, even without signing for these meals, his complaints demonstrate an attempt to
21 harm the Defendants.

### 4.    **Donated Materials**

23    Plaintiff seeks to have this Court require the Defendants to provide him with donated
24 supplies for Shabbat services. (Doc. # 117 at 11-12). Plaintiff alleges that he has been
25 denied religious programs, such as videos, candles, grape juice, and matzo, which have been
26 donated. (Id. at 5-6). Plaintiff also complains about (1) being ordered to now wear his
27 religious underwear such that it can be seen, (2) being denied a replacement Kippah,

1  (3) being denied Shabbat day morning service, and (4) having other inmates handle his
2  Kosher diet.  (Id. at 6).

3        Linderman declared that at present, there were no donated Jewish religious supplies
4  at the prison where Plaintiff is housed.  (Doc. # 135, Exh. A ¶ 7).  Linderman asserted that
5  Plaintiff may request that individuals or entities approved by the Chaplaincy to donate
6  religious materials.  (Id. at ¶ 8).  Linderman maintained that Jewish Orthodox persons are
7  routinely provided opportunities to conduct services.  (Id. at ¶ 11).  Further, in accordance
8  with the tenets of Judaism, Plaintiff wears a ball cap instead of a yarmulke.  (Id. at ¶ 16).

9        According to Linderman's uncontested declaration, there is no donated material and
10 Plaintiff is not being denied access to any materials.  Further, Plaintiff has not attempted to
11 support his claims that (1) he was ordered to wear his religious underwear such that it can
12 be seen, (2) he was denied a replacement Kippah, (3) he was denied Shabbat day morning
13 service, and (4) other inmates handled his Kosher diet.  See Somers, 109 F.3d at 622 n.5
14 (providing that conclusory allegations are insufficient to support the stripping of qualified
15 immunity).  In fact, Linderman's declaration demonstrates that Plaintiff had a ball cap, which
16 sufficed as a Kippah, and that Plaintiff had opportunities to attend services.  In sum, the
17 Defendants' actions were in conformity with Plaintiff's religious tenants and thus did not
18 burden Plaintiff's right to exercise his religion.  See Warsoldier, 418 F.3d at 994-95.  Further,
19 Plaintiff's complaints are patently frivolous and maliciously pursued.

20       **5.**    **Separate Religious Services**

21       Plaintiff seeks to have separate services from individuals he considers not to be Jews.
22 (Doc. #117 at 6; Doc. # 142 at ¶¶ 16-17).  In particular, Plaintiff sought to have individuals
23 who attended Orthodox Jewish services to prove that they were Jewish, *i.e.* either born of a
24 Jewish mother or converted according to Jewish law.  (Doc. # 142, Exh. B).  Senior Chaplain
25 Alwin Becker responded to the request by stating that "[i]f an inmate wishes to be identified
26 as Jewish and participate in the regularly scheduled Jewish service we are not going to
27 violate his right to do so," thereby refusing to force inmates to provide a "pedigree."  (Id.,
28

1  Exh. C). Linderman maintained that Jewish Orthodox and Messianic services are held at the
2  same times, but that the groups worshiped separately. (Doc. # 137, Exh. A at ¶ 11).

3  Plaintiff has failed to demonstrate that the Defendants placed a substantial burden on
4  the exercise of his religion by refusing to ban Messianic Jews from Jewish religious services
5  and refusing to require an inmate to prove either that his mother was Jewish or that he was
6  a proper Jewish convert in order to attend Jewish services. See Warsoldier, 418 F.3d at
7  994-95. Further, to comply with Plaintiff's requests has the significant potential of violating
8  other inmates' right to exercise their religion. See id. Thus, Plaintiff's requests are malicious
9  and offensive to this Court.

10  **6.  Complaints in Reply**

11  Plaintiff seeks to have his medical shaving waiver enforced and the Tucson facility
12  to properly abide by his dietary Kosher requirements. (Doc. # 142 at ¶¶ 5-7, 9-14). Plaintiff
13  also alludes to other problems he has suffered since being transferred to the Tucson facility,
14  including that (1) he lacks access to his family, friends, or religious advisors, (2) his dorm
15  is dirty, (3) various medically prescribed benefits have been revoked, (4) he has not been
16  provided clothing, (5) his sheets, towels, washcloth, and blanket are old, stained, and dingy,
17  (6) the showers have mold, and (6) he has not been provided state-issued shoes. (Id. at ¶¶
18  30-35). Plaintiff acknowledges that these problems have arisen only since he was transferred
19  to the Tucson facility. (Id at ¶ 9). However, these claims are not related to the original suit,
20  see In re Lorillard Tobacco Company, 370 F.3d at 986-97, and are improperly raised for the
21  first time in a reply, see Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 2004) (providing that
22  "[i]ssues raised for the first time in the reply brief are waived"). Further, these claims are not
23  properly raised in this Court, but must be pursued in the federal district court in Tucson
24  where venue is proper. 28 U.S.C. § 1391(b).

25  **7.  Rabbi**

26  Plaintiff complains that Rabbi Shemtov has not responded to his requests for a visit.
27  (Doc. # 142 at ¶ 5). However, Plaintiff has not alleged that the Defendants are preventing
28

1  or interfering with the visit.  Moreover, Rabbi Shemtov is not a party to the suit.
2  Accordingly, Plaintiff is not entitled to injunctive relief as to this claim.

3      In sum, Plaintiff has not shown that these issues present a significant threat of
4  irreparable injury.  Accordingly, the Motion for Preliminary Injunction on these issues will
5  be denied.

6  **D.    42 U.S.C. § 1997e(c)**.

7      "The court shall on its own motion . . . dismiss any action with respect to prison
8  conditions under [42 U.S.C. § 1983], . . . or any other Federal law, by a prisoner confined in
9  any jail, prison, or other correctional facility if the court is satisfied that the action is
10 frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks
11 monetary relief from a defendant who is immune from such relief."  42 U.S.C. § 1997e(c);
12 see also 28 U.S.C. § 1915; Lira v. Herrera, 427 F.3d 1164, 1171 (9th Cir. 2005).  "A case is
13 malicious if it was filed with the 'intention or desire to harm another.'" Andrews v. King, 398
14 F.3d 1113, 1121 (9th Cir. 2005) (defining malicious as set forth in § 1915).

15     Plaintiff's instant motion is his fourth attempt to seek a restraining order and
16 injunctive relief.  In his motion, Plaintiff complains about actions which, as indicated above,
17 are in conformity with his religious tenants.  Moreover, Plaintiff complains about these
18 actions after the Defendants have specifically put into place policies in an attempt to abide
19 by Plaintiff's religious requirements.  Additionally, Plaintiff appears to be adapting his
20 requirements and adding restrictions to the activities he may undertake over Shabbat.
21 Plaintiff also adds additional complaints which are not properly filed in this Court as Plaintiff
22 is currently located in Tucson, Arizona.  Finally, Plaintiff goes as far as to attempt to limit
23 other inmates in exercising their religion by requesting that individuals undergo a "pedigree
24 review," which specifically excludes Messianic Jews, before being allowed to practice
25 Judaism. Plaintiff's actions are malicious in that they are undertaken with an intent to cause
26 the Defendants harm, and are quite often offensive.  As a result, this Court will dismiss
27
28

1  Plaintiff's Complaint without prejudice.[4]  This Court also advises Plaintiff that he will risk
2  the dismissal of any other pending or future action in which he conducts himself in a similar
3  fashion.

4  **IT IS ORDERED** withdrawing the reference of this case to the Magistrate Judge as
5  to Defendants' request to strike the reply (Doc. # 143), Plaintiff's Motion for Extension of
6  Time (Doc. # 99), the Canteen Defendant's Motion for Separate and Final Judgment (Doc.
7  # 146) and Plaintiff's Motion to Take Deposition upon Oral Examination (Doc. # 119).  All
8  other matters shall remain with Magistrate Judge Estrada for disposition as appropriate.

9  **IT IS THEREFORE ORDERED:**

10  (1) That Plaintiff's Declaration (Doc. # 142) is construed as a reply to the Defendants'
11  response to his Motion for Temporary Restraining Order, Preliminary Injunction, and
12  Request for Expedited Telephonic Hearing;

13  (2) That Defendants' request to strike the reply (Doc. # 143) is denied;

14  (3) That Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction
15  (Doc. # 117) is denied;

16  (3) That Plaintiff's Request for Expedited Telephonic Hearing (Doc. # 117) is denied
17  as moot;

18  (4) That Plaintiff's Motion for Extension of Time (Doc. # 99) is denied as moot;

---

[4] It is also noted that in his pending Complaint, which Plaintiff again seeks to amend (Doc. # 150), Plaintiff alleged that his constitutional rights were violated by him being (1) removed from a Kosher diet during the year, (2) removed from a Kosher diet during Passover, (3) forced to write on Shabbat, (4) deprived of religious garments, and (5)forced to shave his beard.  The evidence submitted in the course of Plaintiff's current motion demonstrates that Plaintiff fails to state a valid claim that his constitutional rights were violated by being removed from a Kosher diet because he was not removed due to his religion but due to his failure to abide by the meal policies.  Further, Plaintiff fails to state a valid claim that his constitutional rights were violated by him being forced to write on Shabbat because the evidence demonstrates that he suffered no harm from not signing for his Shabbat meals, but was removed from a Kosher diet because of his inability or lack of signing for several non-Shabbat meals.  Thus, Counts I, II, and III are patently frivolous and due to be dismissed even absent the instant sanction for malicious filings.

1    (5) That Plaintiff's Motion to Take Deposition upon Oral Examination (Doc. # 119)
2 is denied as moot;
3    (6) The Canteen Defendant's Motion for Separate and Final Judgment (Doc. # 146)
4 is denied as moot; and
5    (7) That Plaintiff's Complaint is dismissed without prejudice due to his malicious and
6 vexatious actions. The Clerk of Court is directed to dismiss this action without prejudice,
7 and enter judgment accordingly.

9    DATED this 13th day of February, 2006.

_____
Stephen M. McNamee
Chief United States District Judge

- 14 -